POND AND OTHERS *VS.* CLARK AND ANOTHER.

Although, to sustain a suit in chancery, it is necessary that the plaintiff should have an interest in the subject of such suit, yet where the plaintiff in a bill in equity, assigned his claim against the defendants *pendente lite,* (but whether such assignment was absolute, or qualified, did not appear,) and the trial of the cause afterwards proceeded without objection from the defendants, until after a report had been made by the committee to whom the cause was referred; it was held, that such bill ought not to be dismissed.

Articles of copartnership between the plaintiffs and defendants, in a bill in chancery, brought for the settlement of a copartnership account, stipulated that the plaintiffs were to furnish the funds and credits necessary for conducting the copartnership business, and that, "all accounts, paid by either party for necessary disbursements in the business of the company, were to be charged to the concern." A committee, to whom the cause was referred, found a balance of $1,597.16 for interest, in favor of the plaintiffs on disbursements, made in the year 1850. It appeared that, in 1851, the defendant was informed of the result of such business; at all times had access to the accounts on the partnership book, in which he was interested, and sometimes inspected them, but made no objection to such charge, until the hearing of the cause in 1857. Held, that it was then too late for the defendant to object to such charge of interest, for the first time.

Where the defendants in 1850, entered into a contract with a firm in Porto Rico, for the transacting of business between Porto Rico and New York, by the terms of which it was provided that each of the defendants should be entitled to one-third of the profits of such business, and in 1851, they entered into articles of co-partnership with the plaintiffs, by which it was provided " that the plaintiffs' should be interested in said business, and that all shipments, made in pursuance of said contract, should be on joint account; that the plaintiffs should be one-third interested, and that the defendants should represent the then two-thirds interest;" it was held that the share of the plaintiffs in the profits of the entire business, transacted under said contracts, was not as was claimed by the defendants one-third of three-fourths, but one-third, thereof.

Where it was provided, in articles of copartnership, between the plaintiffs and defendants, that the services of one member of the firm, should be rendered at a stipulated price, and such partner incurred expenses in the appropriate business of the firm at Porto Rico; it was held that such expenses were a proper charge against the copartnership, and that he had not forfeited his right to the same, by withholding from the other members of the firm, the proceeds of the partnership business, for the period of one month after his return to this country, and until requested by his copartners to make a settlement of said business.

THIS was a bill in chancery, brought by Loyal S. Pond, and Samuel Gilman of the city of New York, and Louis F. Mack of Brooklyn, partners, under the name of Pond, Gilman and Mack, against Thomas B. Jewett, and David Phipps Clark, both of the city of New Haven.

The bill, alleged substantially, that on the third day of January, 1850, at said city of New York, the plaintiffs entered into a special co-partnership with the defendants, in the business of chartering vessels and of buying goods and merchandize to freight the same, and of selling such goods and merchandize, and of navigating such vessels between the ports of New York, in said state of New York, and some one or more ports in the West India islands, and that, by the terms of said co-partnership, it was agreed, among other things, that the plaintiffs should furnish the necessary funds and credits for prosecuting said business; that the said Jewett, Clark and Pond, Gilman and Mack, should make no charges for services rendered in the way of brokerage or commission, or in any other way, except the said Clark, who was to have wages at the rate of sixty dollars per month, during the time he should be engaged, from the time of leaving said port of New York until his return there, in the business of said co-partnership, during its continuance, and his expenses necessarily incurred for the same ; that interest, at the rate of seven per cent. per annum, should be charged by the said Pond, Gilman and Mack, for all advancements of funds by them made, and that the said Pond, Gilman and Mack, should charge a guaranty commission of two and a half per cent. per annum, on all time sales by them made, and that the said Pond, Gilman and Mack, were to receive one-third of the net profits of said business, and said T. B. Jewett was also to receive one-third of the net profits of said business, and the said Daniel Phipps Clark was also to receive the other one-third net profits of the same ; which said

co-partnership was not expressly limited in the term of its continuance, but, by the mutual understanding of all the parties to the same, might continue during the pleasure of the parties to carry on that business.

That, relying on said agreement, and on the fidelity of the said Daniel Phipps Clark, plaintiff, during the continuance of said co-partnership, to wit, at various times, between the third day of January, 1850, and the 20th day of October, 1852, when said co-partnership terminated, and was dissolved by the misconduct of the said Daniel Phipps Clark, and the withdrawal of the plaintiffs from the same, advanced and paid into said co-partnership various large sums of money, amounting in all to twenty thousand dollars, pursuant to the terms of said co-partnership contract; that said Daniel Phipps Clark conducted the business of said co-partnership, in the said West Indies ; and that said co-partnership did a profitable business, that said Daniel Phipps Clark received, during the period aforesaid, a large sum of money, as the avails of such advancements by the plaintiffs in said copartnership business, amounting to over ten thousand dollars, but that the said Clark had never paid to the plaintiffs, nor to said Jewett, nor to either of them, any such avails, nor had the plaintiffs or either of them, or the said Jewett, ever received any of the monies or property of said co-partnership, nor had Clark ever rendered any account of the business of said co-partnership to the plaintiffs, though often requested so to do, and particularly on the first day of September, 1852. But the plaintiffs admitted that the said Jewett had always been and still was ready and willing to give a full account of all matters and things done by him in the said co-partnership business.

The bill prayed that an account be taken of all the dealings and transactions of said co-partnership from its establishment to the time of its termination, and that said Clark be required to pay to the plaintiffs such sum, or sums, as might be due to them, upon a final settlement of all the

accounts between all the parties aforesaid to said co-partnership agreements.

The cause was referred to a committee, who, at the term of the superior court, holden in October, 1854, made their report, embracing the following facts.

The plaintiffs, Pond, Gilman, and Mack, were commission merchants and brokers, in the city of New York; the defendant, Thomas P. Jewett, was a merchant, residing in New Haven, Connecticut, and the defendant, Clark, was a shipmaster, of said New Haven, who sometimes resided for a few months in the island of Porto Rico, in the West Indies, as an agent for the purchase of the produce of that island, and in selling cargoes which had been shipped there.

Prior to the autumn of 1849, the defendants, Jewett and Clark, and one Richard M. Clark, had been engaged as partners in a West India business; in the course of which business, said Jewett had become indebted to the defendant, Clark, in the sum of $689.53, but had never rendered his account of such business to said Clark.

In the fall of 1849, the plaintiffs, and the defendants, Clark and Jewett, entered into a partnership for the purpose of transacting a Porto Rico business, by an agreement, which was afterward, on the eleventh day of January, 1850, reduced to writing, and signed by the parties, and is as follows:

" This agreement made between Thomas B. Jewett, D. Phipps Clark, and Pond, Gilman and Mack, witnesseth, that D. Phipps Clark goes to Porto Rico for the purpose of shipping produce on joint stock account of the parties to this agreement, that is, each one-third. The said Clark is to have wages at the rate of sixty dollars per month, and his expenses in Porto Rico, during the time he is employed under this agreement, which is to be charged to the concern. The said Pond, Gilman and Mack are to charge the customary brokerage on all sales made by them, which is also to be charged to the concern. The said Thomas B. Jewett is to charge the expenses actually incurred by his being in New

York, attending to the shipments of said Clark, which is also to be charged to the concern.

The said Pond, Gilman and Mack, are to furnish a sufficient letter of credit to enable the said Clark to make his purchases, for which no charge is to be made. Neither party are to charge anything for services, except what is named in this agreement, but all amounts paid by either party for necessary disbursements on the business are to be charged to the concern."

In pursuance of such agreement, the defendant, Clark, went to Porto Rico in January, 1850, and remained there until July or August, of the same year. During that time, he shipped to the plaintiffs, on partnership account, several cargoes consisting principally of sugar and molasses, which were sold by the plaintiffs; and the plaintiffs and said Jewett shipped to him, during the same time, assorted cargoes of articles likely to be in demand on the island. The plaintiffs made the advances and kept the accounts. The defendant, Clark, returned from Porto Rico in July or August, 1850, and was, from time to time, in New York during that season, and after his return in 1851. At such times he made the office of the plaintiffs his principal stopping place, and had access to the accounts in which he was interested on their books, and sometimes inspected them. It did not appear that he was present when the account was closed, and the balance struck, but he was informed of the result, and of his share of the profits, and never objected to the account, until the present trial. All the parties were satisfied with the result of the business of 1850. The profits, amounting to sixty-two hundred and fifty dollars and twenty-two cents, were divided into three equal parts, which were transferred, upon the books of the plaintiffs, to the private accounts of the parties respectively, viz: one-third to Jewett; one-third to the defendant, Clark; and one third to the profit and loss account of the plaintiffs themselves.

After the business of 1850 was closed, said Jewett and

D. P. Clark, on the 15th of October, 1850, entered into a new partnership, for the purpose of doing a Porto Rico business of a nature similar to that done in 1850, with the house of Dubocq, Garmon & Co., merchants in Ponce, Porto Rico, by an agreement of that date, of which the following is a copy, viz:

" Conditions of an agreement entered between Mr. Thomas B. Jewett and Mr. D. Phipps Clark, on the first part, and Mr. J. Dubocq, for his house in Ponce, Porto Rico, Messrs. Dubocq, Gamon & Co., on the second part, to say:

*First.* The cargoes sent out to Ponce, Porto Rico, from New York, by the first part, are to be on joint account with the second part, and the interest which the second part represents in said cargoes is to be one-fourth; and the first part will represent three-fourths interest.

*Second.* The second part will ship produce, in such quantities as may be deemed advisable by the first part, and both parties will represent the same interest in shipments of produce from Porto Rico as on the cargoes sent out from New York.

*Third.* Neither party to charge any commission or make any charge for services rendered in prosecuting the business, unless for money paid out, except a guaranty commission of two and one-half per cent., which is to be charged by both parties.

*Fourth.* Interest to be charged by both parties at the rate of seven per cent. per annum.

Signed in duplicate the 15th day of October, 1850."

It having been afterwards agreed between the said Jewett, D. P. Clark, and the plaintiffs, that the plaintiffs should become interested therein, but without the assent of Dubocq, Gamon & Co., who were not parties to such new arrangements, the following agreement was made and executed between the said Jewett, D. P. Clark, and the plaintiffs, to wit:

" Conditions of an agreement made between Thomas B.

Jewett, D. Phipps Clark, and Pond, Gilman & Mack, in reference to the business to be done by them between New York and Ponce, Porto Rico.

*First.* All shipments from New York to Ponce, Porto Rico, and all shipments from Ponce, Porto Rico to New York, which are made by Dubocq, Gamon & Co., in pursuance of an agreement between them and T. B. Jewett and D. Phipps Clark, (dated the 15th day of October, 1850,) shall be on joint account, that is, Pond, Gilman & Mack, are to be one-third interested, and T. B. Jewett and D. Phipps Clark are to represent the other two-thirds interest.

*Second.* Pond, Gilman & Mack are to furnish the necessary funds and credits for prosecuting the business.

*Third.* T. B. Jewett and D. Phipps Clark agree that no commission shall be charged by Dubocq, Gamon & Co., in purchases and sales, except a guaranty commission of two and one-half per cent. on all sales made on time.

*Fourth.* Neither party are to make any charge for services rendered in the way of brokerage or commissions, or any other way, except D. Phipps Clark, who is to have wages at the rate of sixty dollars per month, from the date of arrival in Ponce till he has order to commence operations in Mayaguez, and his expenses for the same time.

*Fifth.* Interest to be charged at the rate of seven per cent. per annum.

*Sixth.* Pond, Gilman & Mack are to charge a guaranty commission of two and a-half per cent on all time sales.

Signed in New York, in duplicate, on the 27th day of January, 1851."

In pursuance of the two last mentioned agreements, the Porto Rico business was carried on between the parties in the same manner as in 1850, except that the cargoes were shipped to and by Dubocq, Gamon & Co., instead of the defendant, Clark. The accounts were kept by the plaintiffs, according to an understanding between the parties, and at the conclusion of the business for the year, the parties, inclu-

ding Dubocq, for the house of Dubocq, Gamon & Co., met at the office of the plaintiffs, for several evenings, for the purpose of examining the accounts. The defendant, Clark, was present at one or more of said meetings. The parties were dissatisfied, because the profits for the year were not as large as in the previous year, although more business had been done; which was owing to necessary expenses incurred for storage and interest. No mistake being found, the accounts were considered as correct. The profits for that year amounted to two thousand and twenty-one dollars and eleven cents, which was carried, on the books of the plaintiffs, to the private accounts of the parties respectively, as follows, to wit:

| | |
|---|---:|
| One fourth to Dubocq, Gamon & Co., | $505.03 |
| One third to the profit account of the plaintiffs, | 673.34 |
| One half of the balance to T. B. Jewett, | 420.87 |
| And one half of the balance to D. P. Clark, | 420.87 |
| Total, | 2,020.11 |

The defendant, Clark, knew of the result of the business of 1851, and although dissatisfied, like the other partners, with the result of that business, did not object to the correctness of the accounts.

After the conclusion of the business of 1851, said Jewett, for himself and in behalf of the plaintiffs, repeatedly requested the defendant, Clark, again to engage in a Porto Rico business, in the same manner as he had done before, which he declined, claiming that he was unable to obtain his accounts. Said Jewett also requested him, as a part of such business, to take a cargo to Porto Rico and return with fruit, which he also declined for the same reason, and because he did not think that such a voyage would be profitable. In the mean time, the plaintiffs, Jewett and Dubocq, Gamon & Co., engaged in a fruit voyage, like that which had been proposed to the defendant, Clark, and they also entered into an arrangement with Dubocq, Gamon & Co., for doing a Porto

Rico business in 1852, similar to that which had been entered into between said Jewett, D. P. Clark, and Dubocq, Gamon & Co., for 1851. Said Clark remained in this country during the winter of 1851–2, and knew of said fruit voyage, and that the plaintiffs were engaged in a Porto Rico business; although it did not satisfactorily appear that he knew of the co-partnership with Dubocq, Gamon & Co., for the business of 1852.

On the 17th day of February, 1852, the defendant, Clark, applied to the plaintiffs for his private account with them, which was thereupon rendered to him; another private account was also afterward rendered, by them, to him, which comprised the said account of February 19th, 1852, together with the additional items, which had accrued from the last mentioned date to January 1, 1854. The plaintiffs were always ready and willing to show the defendant, Clark, those accounts on their books, in which he was interested; and he had no difficulty in obtaining, or inspecting, them, at any time.

In the month of March, 1852, while the plaintiffs, Jewett and Dubocq, Gamon & Co., were engaged in business as above mentioned, said D. P. Clark applied to the plaintiffs, and Jewett, to engage with him in a Porto Rico business, and it was accordingly agreed between them to engage again, upon the same terms as in the agreement between the same parties, for a like business, for 1851, except that the plaintiffs should furnish a letter of credit on Whittemore & Co., a responsible house in St. Thomas, West Indies, to the amount of $20,000, and that D. P. Clark should go to Mayaguez or Arracaibo, on the Island of Porto Rico, with a cargo, and remain there doing business during the crop season. This latter agreement was not reduced to writing. The letter of credit was furnished as agreed, and also a letter of instructions to D. P. Clark.

In pursuance of such new arrangement, said D. P. Clark sailed from New York on the 18th of March, 1852, in a ves-

sel called the Aconite, with a cargo amounting to $6,301.46, which was purchased by the plaintiffs, and for which they made the necessary advances. Upon his arrival out, he engaged in the business, and purchased and consigned to the plaintiffs, two cargoes of molasses, the net proceeds of which amounted to $13,595.95, and while he remained on the Island, drew on the plaintiffs, through Whittemore & Co., to the amount of $13,550, which they paid. The proceeds of said drafts were applied to the purchase of the said two cargoes of molasses. The cargo of the Aconite being of an unsaleable nature, was sold on long credits. The defendant, Clark, transmitted to Jewett and the plaintiffs a memorandum, or account sales of such cargo, but not the closing account sales, as certain shooks and hoops, part of the cargo, then remained on hand, not disposed of.

While Clark remained in Porto Rico, in 1852, engaged in business, he corresponded with the plaintiffs and Jewett, as usual. Upon his return to New York, he did not call upon the plaintiffs, or render to them the closing account sales. The plaintiffs, having made enquiry for him, found him, about a month after his return, at the house of his brother in New York, and requested a settlement of the business of 1852. He assigned as a reason for not calling upon them, that he wished to bring them and Jewett to a settlement, but made none with them, upon their request aforesaid. After his return to this country, he loaned out $2,700 of the money which he had brought home, to his brother, Alexander Clark; $800 to Miss Grace Phipps, and the balance he kept to live upon.

The defendant, Clark, never had any difficulty in obtaining a settlement of his accounts, or any of them, with the plaintiffs, but he did have a difficulty in obtaining a settlement of his private account with said Jewett, for business done in the fall of 1849, or before that time; and the committee found, upon the facts aforesaid, that it was his intention, at the time when he sailed in the Aconite, to withhold

from the plaintiffs the proceeds of her cargo and of the business of 1852, until he could obtain a settlement of his account with said Jewett, and that the acts, done on his return, were in pursuance of such intention. The committee found, from the account of D. P. Clark of the Porto Rico business, in 1852, that there remained in his hands, belonging to the plaintiffs, on account of such business, exclusive of wages and expenses, the sum of $4,681.89, and he claimed that the sum of $750.90 should be allowed to him for his wages and expenses in 1852. If, however, any wages or expenses are properly chargeable by him under the circumstances aforesaid, there ought to be deducted from the sum, claimed by him therefor, as aforesaid, the item of $42.12, charged for passages and expenses, before sailing in the Aconite; the item of $70.78, which is already charged in his Porto Rico account, 1852; and the further item of $60, for overcharge of one month's wages, making a total of $172.90, to be deducted from said sum of $750.00 and leaving a balance of $578, to be charged for such wages and expenses, if the same are properly chargeable as aforesaid. If said Clark is not entitled to charge such wages and expenses by law, then there remained in his hands, belonging to the plaintiffs, on account of the business of 1852, the sum of $4,681.89; but if he is entitled so to charge, then the sum of $4,103.89.

The plaintiffs' account of the Porto Rico business of 1852, shows a balance due to them on said business, the sum of $6,945.05; and in order to show how much loss was sustained on that business, either the said sum of $4,681.89, or the sum of $4,103.89 should be deducted from the said sum of $6,945.05; by which it appears, that if such wages and expenses are not to be allowed to said Clark, then such loss amounts to the sum of $2,263.16, and if the same are to be allowed, then such loss amounts to $2,741.16, and such loss being equally divided between said three parties, amounts in the first instance to $754.38 to each, and in the other, to $913.72 to each.

In said private account, the sum of $220 is credited to said Clark for one third of his wages and expenses in the business of 1851. By the agreement between D. P. Clark, Jewett and the plaintiffs for that year, said Clark was entitled to charge his wages and expenses. The plaintiffs are right, therefore, in crediting their share of the same, as above stated, being one-third of $660, the whole amount of such wages and expenses. The difference between $660 and $220, equal to $440, is to be borne by Clark, Jewett and Dubocq, Gamon & Co.; but the latter are not, by their agreement, chargeable with any part thereof. If they were so chargeable, their proper share would be one fourth of $660, or $165, which latter sum Clark agreed with Jewett to offset against the right of said Jewett to charge for his expenses, and the same being deducted from $440, equals $275, one half of which is $137.50, is to be borne by Clark, and the other half, or $137.50, by Jewett. The plaintiffs, therefore, upon settlement, should have allowed Clark $137.50, (Jewett's share,) and charged the same sum to Jewett.

If said D. P. Clark ought to be allowed his said wages and expenses, he is indebted to the plaintiffs for the funds in his hands, on the Porto Rico account of 1852, in the sum of forty-one hundred and three dollars and eighty-nine cents, with interest thereon, at seven per cent., from the 18th of August, 1852, and for the loss sustained on the same business in the sum of ($913.72,) nine hundred and thirteen dollars and seventy-two cents, with interest at the same rate, from the 9th of September, 1852, less the amount of one hundred and two dollars and forty-five and one half cents, ($102.45½,) with interest thereon, at the same rate, from January 1st, 1854 ; but if said D. P. Clark ought not to be allowed such wages and expenses, the committee found that he was indebted to the plaintiffs for the funds in his hands, on the Porto Rico account of 1852, in the sum of forty-six hundred eighty-one dollars and eighty-nine cents, (4,681.89,) with interest thereon, at 7 per cent., from August 18, 1852, and

for the loss sustained on the same business, in the sum of seven hundred and fifty-four dollars and thirty-eight cents, (754.38,) with interest thereon, at the same rate, from September 9th, 1852, less the sum of ($102.45½) one hundred and two dollars and forty-five and one half cents, with interest thereon, at the same rate from January 1st, 1854.

The committee also found to be due from said Jewett to the plaintiffs, for his share of the loss on the Porto Rico business of 1852, either the sum of $913.72, or the sum of $754.38, according as the said D. P. Clark shall be allowed his said wages and expenses, or not be allowed the same, as aforesaid.

The several agreements for the transaction of a Porto Rico business were understood by the respective parties to the same, to be engagements for a single year, or crop season only, and the said D. P. Clark was not entitled to any share of the business done in 1852, between the said Jewett, Dubocq, Gamon & Co., and the plaintiffs.

After the business of 1852 was closed, the plaintiffs became insolvent, and since the commencement of this suit assigned their claims, described in the bill, to J. B. Brown, of Portland, Maine, in part satisfaction of a *bona fide* claim in his favor against them, to an amount larger than their said claim against the defendant, Clark. Said Brown appeared on the trial before the committee, by his counsel.

Against the acceptance of this report, the defendant, Clark, remonstrated, assigning, as grounds for remonstrance among others, 1. That the committee erred, in their construction of the legal effect of the written contracts of co-partnerships, set forth in their report, and consequently erred in their estimate of the remonstrants' share of the profits, due to him under said contracts. 2. In the allowance of interest, in favor of the plaintiffs, upon the advancements made by them in the course of the co-partnership business. 3. In not admitting said Clark to be a partner in the business, transacted in 1852, between said Jewett, and Dubocq, Gamon & Co.

The questions of law, arising upon said report and remonstrance, were reserved for the advice of this court.

*R. I. & C. R. Ingersoll,* for the plaintiffs.

*Dutton* and *Munson* and *Harrison,* for the defendants.

ELLSWORTH, J.   One objection to the plaintiffs' right of recovery is, that, since the commencement of the suit, the plaintiffs have assigned their claim to one Brown. The terms of this assignment are not before us, and we know not whether the assignment is expressed so as to carry along with it this suit and attachment, for the benefit of the assignee, or if the plaintiffs may not still have some resulting, or conditional interest in the suit. This should have been made distinctly to appear, if the point was seriously to be made. The loss of the attachment may be the loss of the debt; for it may be too late to begin another suit, as other attachments may now intervene which will absorb the property. Indeed, the point itself seems scarcely to have attracted attention on the trial, for it is not mentioned in the answer, nor anywhere alluded to, except by the committee, just at the close of the report, where, in the briefest manner possible, they simply mention the fact. Under the circumstances, we may do great injustice to the assignee, who appeared and conducted the suit before the committee, if we yield to this objection at this time, and especially as we are not altogether satisfied that the question is necessarily presented in such a form, as to require us to decide it. It is clear, that the suit was properly commenced in the name of the plaintiffs, for they were then the owners of the claim. If anything has taken place since, which renders further proceedings improper, it should have been brought to the notice of the court by plea, or answer, and then the facts would have been investigated, and no injustice done to the assignee. We will add, if the question had been made when the extent and character of the assignment would have been enquired into, we are not satisfied it could, after all, avail the defendants; it certainly ought not to, if the contrary was understood by the parties. The gene-

ral principle, as to parties, is undoubtedly the same in equity, as in law, that proceedings must be in the name of the person having the interest, but there may be some exceptions, at least in the further prosecution of a suit in equity. In *Lee* v. *Jilson*, 9 Conn. R., 95, this court held that, at law, the absolute endorsement, and transfer, of a negotiable note by the payee, after he had brought the suit, and while it was pending, would defeat a recovery; but even then, the judge, who gives the opinion of the court, says; " what might be the effect of circumstances attending the assignment, such as an agreement, on the part of the assignee, that the suit should be prosecuted in the name of the payee, we do not decide; no such circumstances exist in the case under consideration." We are inclined to consider the rule to be as laid down in Story's Eq. Pl., § 156; generally speaking, an assignee, *pendente lite*, need not be made a party to a bill, or be brought before the court, &c., "and it will make no difference whether the assignee, *pendente lite*, be the claimant of a legal or an equitable interest, or whether he be the assignee of the plaintiffs, or the defendants," 1 Y. & C. N. R., 230. We see no reason why the bill should be dismissed on this account, and such is the judgment of the court.

It is again objected to the report, that interest is allowed to the plaintiffs, on the accounts, or business, of 1850, for money disbursed in the course of the business. The contract for that year says nothing about interest, it is true, but its language is, " all accounts paid by either party, for necessary disbursements in the business of the company, are to be charged to the concern." The business was expected to be done on a letter of credit from the plaintiffs, together with the avails of sales made in New York, as cargoes should arrive from time to time, and be turned into money. The amount of business that year was about $100,000, and the balance of interest in favor of the plaintiffs for money advanced was $1,579.16, which the committee allowed to the plaintiffs. Whatever impropriety, if indeed any, there

Pond and others *v.* Clark and another.

might have been, in charging interest in the first instance, it was quite too late to make the objection, for the first time, before the committee. The defendants well knew, in 1850 and 1851, that this balance of interest was charged by the plaintiffs, for the committee found that the defendants, and especially Daniel P. Clark, who makes the objection, were familiar with the manner in which the company accounts were kept, in the books lying open before him ; and what is more important, his own account for 1850, made up with this item of interest in it, and handed to him, was not objected to then, or afterward. If said Clark had any objection, he should have made it at the time, or within a reasonable time after, but not having done so, the account, as rendered, became an account settled. Said Clark likewise took as his share, his one-third of the profits for the year, the whole being $6,250.21, and he cannot now ask to have the account opened. 1 Greenl. Ev., § 197. In *Willis* v. *Jernegan,* 2 Atk., 252, Lord Hardwick said, " if the person, to whom the account is sent, kept the account for any length of time, without making objection, it became a stated account." So, " daily entries in a book, constantly open to the party's inspection, were admissions against him, of the matters therein stated." Greenl. Ev., § 197. *Butler* v. *Cornwall Iron Com.,* 22 Conn. R., 336.

For the reasons assigned for allowing interest on the account of 1850, interest should be allowed for 1851. Besides, the contracts of October 1850, and January 1851, provide for the allowance of interest, at the rate of seven per cent., and so the business of 1852 was conducted upon the same principles and is subject to the same allowance of interest.

Again, it is said, the committee erred, in allowing the plaintiffs one third of the profits on the whole business of 1851, instead of on one-third of three quarters of the business, because Dubocq, Gamon & Co., were to have one quarter as their part. We think the committee were correct. The

plaintiffs were not to allow, any part of their one third, because Jewett & Clark had a sub-contract with Dubocq, Gamon & Co., to allow them one quarter for transacting a part of their business in the West Indies. In the contract of the 29th of January, 1851, the plaintiffs are to be interested in " all shipments to and from New York," in the proportion of one third each as between themselves and Clark and Jewett.

The committee were correct in not admitting Clark, as a partner in the business of 1852, at Ponce. Clark had refused to engage in that business, and he never had anything to do with it.

The committee were correct in allowing Clark his wages and expenses for 1852, being $578. The services were rendered at a stipulated price, and the expenses arose in the appropriate business of the company, and they are not forfeited by any supposed fraudulent motives of Clark. So we think the $220, is properly credited him, for his wages and expenses in the business of 1851, and that he is entitled to have the benefit of the $137.50, the share which Jewett was to pay, and the benefit of which he agreed Clark should have, in the settlement of the account.

These are the only questions that have been discussed at the bar, and we advise judgment to be rendered upon these points, on the principles expressed.

In this opinion, the other Judges, STORRS and HINMAN, concurred.

Decree accordingly.